**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 11:15 AM March 22, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MARTIN DESIGNS, INC., | ) | CASE NO. 08-60431 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |

On September 21, 2012, the chapter 7 trustee, Josiah L. Mason ("Trustee"), filed an application to employ the firm of Luper, Neidenthal & Logan, LPA ("LNL") as counsel for the Trustee. LNL was previously employed by the Trustee as special litigation counsel. Through this application, Trustee seeks to expand the purview of LNL's services. The motion is opposed by Trustee's former counsel, Squire, Sanders & Dempsey, LLP ("SSD"). Also before the court is SSD's final fee application, filed on August 30, 2012. Trustee objects to the fee application. Trustee also filed a motion in limine seeking to limit the court's consideration of certain evidence presented by SSD in support of its fee application. The court held a hearing on the first two motions on December 3, 2012.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) or (O).

This opinion is not intended for publication or citation. The availability of this opinion, in

1

electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Martin Designs, Inc. ("Debtor") was an Ohio corporation that produced and branded products for resale. Martin Myers ("Myers") founded Debtor and, until 2003, owned 100% of its stock. In 2003, MD Acquisitions, LLC ("MDA") entered into a $9,500,000 purchase transaction for the controlling interest in Debtor. As part of the sale, the parties executed various documents, including a stock purchase agreement, an employment agreement, and a stockholders' agreement. Following MDA's purchase, ownership was divided among three entities: MDA (66.5%), Myers (25.4%) ("Myers") and Alan Glazer Associates, LLC (7.5%). Myers remained employed by Debtor following the sale.

On September 26, 2005, MDA and Debtor filed a complaint against Myers in the Franklin County Court of Common Pleas, charging Myers with breaches of the three named agreements. Among other things, the complaint alleged that Myers had been running a competing business, Pet Brands, Inc., during the period he was supposed to be devoted to Debtor. The complaint also included counts for misappropriation of trade secrets and confidential information, rescission of the purchase agreement, tortious interference with contractual relations, and unjust enrichment. Myers filed counterclaims against MDA and Debtor and also initiated an action in the Ashland County Court of Common Pleas against Debtor. SSD represented both MDA and Debtor in the state court actions.

In the midst of the lawsuits, Debtor filed a chapter 7 bankruptcy petition. In May 2008, Trustee removed the state court actions to this court and filed an application to employ SSD as special litigation counsel to represent the bankruptcy estate in the litigation. In order to avoid potential conflict and disqualification pitfalls, and to secure MDA's funding and assistance with the litigation, Trustee's proposed employment agreement with SSD contained several special provisions. For example, upon approval of the application to employ, SSD agreed to waive any prepetition claims for fees and expenses owed by Debtor, totaling approximately $775,000.00. Trustee compromised all the estate claims with MDA. Additionally, SSD agreed to represent Debtor on a contingency basis. MDA also agreed to advance the reasonable expenses to prosecute and defend the claims and counterclaims.

The employment application provided that the "net proceeds" of any recovery would be pooled and first used to pay "actual litigation fees and expenses" with the remainder split between MDA (55%), SSD (30%) and Trustee (15%). The application states that "if this agreement is approved, neither SSD nor MDA intend to apply to the Court for payment of compensation and reimbursement of expenses in accordance with Section 330 of the Bankruptcy Code." (App. of the Trustee, p. 12-13, ECF No. 87.) The court approved SSD's employment as special counsel to the Trustee over the objection of Myers.

Subsequently, the court remanded the Franklin County action on August 28, 2009.

On February 10, 2010, Trustee sought to replace SSD with LNL as litigation counsel in the Franklin County Action, and to employ LNL for other bankruptcy matters, including preference and fraudulent transfer actions. The application states that SSD, LNL and Trustee were in agreement to substitute LNL for SSD. The parties dispute the reason for the change in counsel but the court finds the reasons immaterial. LNL's employment application was approved by the court on March 11, 2010. SSD was served with the application and did not object.

LNL agreed to represent the estate on a contingency basis – "30% of the total amount recovered which will be paid from the settlement, verdict, or judgment of the Franklin County Action and any preference matter handled by LNL." Many of the terms from the MDA agreement remained in place with three exceptions: MDA could settle its claims separately, was no longer pooling its recovery with the estate's recovery, and was no longer fronting the litigation expenses for Trustee's sole benefit, but continued to pay expenses that were mutually beneficial.

Following a five week jury trial, verdicts were entered on behalf of MDA and Debtor on February 24, 2011. Debtor was awarded $7,000,000.00:[1] $1,000,000.00 for breach of the executive employment agreement, $1,000,000.00 for the misappropriation of trade secrets, and $5,000,000.00 in damages for breach of the stockholders' agreement. MDA was awarded $5,245,106.00: $1,000,000.00 for breach of the executive employment agreement and $4,245,106.00 for breach of the stock purchase agreement.

On August 30, 2012, SSD filed its first and final fee application seeking $947,318.80 in fees and expenses for the period August 8, 2008 to April 26, 2011. The application also seeks the reimbursement of $259,703.41 in fees and expenses fronted by MDA. Shortly thereafter, Trustee moved to expand the scope of LNL's employment to permit LNL to assist Trustee in challenging the fee application. SSD opposed this request. The matter was set for hearing on December 3, 2012. The parties stated that the hearing was limited to consideration of two issues:

1. Whether LNL should be retained and compensated by the estate for opposing the Squire Sanders' Fee Application, and

2. Whether the Squire Sanders and LNL Retention Applications, as previously approved by the Court, authorize reimbursement to Squire Sanders of its attorney's fees incurred for the benefit of the estate in the Franklin County Action.

(Ag. Order Granting, In Part, M. to Alter or Amend Order Establishing Procedures to Determine the Pro Rata Calculation of Fee and Expenses, ¶ 3, ECF No. 224.) The court limits consideration of the first question strictly to the retention issue, not whether LNL is entitled to compensation.

There is no dispute that the actual monetary recovery by the estate is insufficient to cover payment in full to the parties. Consequently, any distribution needs to be prorated. In order to accomplish that, the court must determine who is entitled to what.

---

1 These figures do not include the prejudgment interest also awarded.

3

## DISCUSSION

### I.  Trustee's application to employ LNL

A trustee generally has "wide latitude in selecting attorneys to represent him." In re Showcase Jewelry Design Ltd., 166 B.R. 205, 206 (Bankr. E.D.N.Y. 1994); *see also* Schwartz v. Geltzer (In re Smith), 507 F.3d 64, 71 (2d Cir. 2007) (other citations omitted).  Here, Trustee wants to hire LNL to address the fee application filed by SSD and proposes to pay LNL on an hourly basis for its assistance.  Trustee's application to employ is brought under the authority of 11 U.S.C. §§ 105, 327(e), 328(a) and Federal Rule of Bankruptcy Procedure 2014.  Trustee posits that LNL's familiarity with the case is optimal for review of SSD's sizeable fee application.  SSD and MDA object to LNL's employment for this purpose.

First, they argue that Trustee intends to challenge the meaning of the term "actual litigation fees and expenses" in his retention agreement with SSD.  Facially, this appears to be a substantive argument better reserved for consideration of the fee application.  However, the root of SSD's argument is that employment of LNL is completely unwarranted because Trustee's position is nonsensical and therefore would unnecessarily waste estate resources and accordingly is not in the best interest of the estate.  For its second argument, they argue that LNL cannot be employed for the specified purpose because LNL is not disinterested under § 327(e) based on SSD's claim that LNL stands to benefit from any reduction in fees and expenses paid to SSD.  For these reasons, SSD and MDA urge the court to decline to appoint LNL as Trustee's counsel.

Section 327(a) authorizes a trustee to employ professional persons, including attorneys, "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327(a).  Under 11 U.S.C. § 330(a)(2), a trustee has standing to move a court to "award compensation that is less than the amount of compensation that is requested."  Trustee is therefore acting within the scope of his duties in opposing the fee application and may employ a professional to assist him.

In its objection to the application to employ LNL, SSD[2] references § 327(e), most likely in response to Trustee's reliance on this provision in the application.  Any reliance on § 327(e) is misplaced.  Section 327(e) states, in its entirety:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

---

2  At this point, the court will use SSD and MDA interchangeably as objectors to the Trustee's application to employ LNL.

4

11 U.S.C. § 327(e).  As an example, this section is frequently used to employ personal injury attorneys who represent debtors on prepetition claims.

It appears the parties focus on the "special purpose" language of the statute, disregarding the balance of the provision.  Through the application to employ, Trustee is seeking to expand the scope of LNL's previous employment to include review of the SSD fee application.  As stated above, this is in furtherance of Trustee's duties under the Bankruptcy Code and therefore constitutes assistance in "conducting the case," which makes this employment under § 327(a).  It may be more apropos to term this additional employment for a limited purpose.  Regardless of the terminology, this is not "special purpose" employment as contemplated under § 327(e).  Further, LNL did not represent the debtor in its previous employment, but represented Trustee and the bankruptcy estate.  Consequently, the court finds section 327(e) is wholly inapplicable to the application to employ LNL.  However, the court will consider SSD's arguments to the extent they are not specific to § 327(e).

Section 327(a) is the governing provision.  Under this section, LNL's employment can be approved only if it does not hold an interest adverse to the estate and is a "disinterested person."  The court will first consider whether LNL holds an interest that is adverse to the estate. Adverse interest is defined as

> (1) to possess . . . an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

In re West Pointe Prop., L.P., 249 B.R. 273, 285 (Bankr. E.D. Tenn. 2000) (citing Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 623 (2nd Cir. 1999) (quoting In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in relevant part and rev'd and remanded in part on other grounds,* 75 B.R. 402 (D.Utah 1987)) (other citations omitted)).  The determination as to whether an interest is adverse is a question of fact.  West Pointe, 249 B.R. at 285 (citing AroChem, 176 F.3d at 621).

The court notes that LNL's original employment was not challenged.  Implicit in approval of LNL's employment was a finding that LNL did not hold an adverse interest.  The formative question is whether something has changed to alter this finding, thereby rendering further employment untenable.  SSD claims that, to the extent Trustee is successful in challenging its fee application, the benefit accrues to LNL, not the estate.  As a result, SSD claims that LNL holds an adverse interest.

To a degree, this argument is specious because any fees that LNL earns will necessarily reduce the estate.  It would be the same for any professional employed by Trustee.  Whether Trustee hires LNL or another firm, compensation for the service constitutes an administrative

5

expense. The aspiration is for the value of the representation to confer an equal or greater benefit to the estate. In this sense, the estate is not a rival claimant and there is no adverse interest. Determination of whether LNL interest is otherwise adverse requires a complete examination of the compensation structure.

### A. Adverse interest – whether LNL has adverse interest prohibiting its employment considered in the context of all entities' fee arrangements

To understand the nature of LNL's economic interest, it is necessary to review the compensation authorized to SSD, MDA and LNL. In order to determine whether LNL has an adverse interest, the court must coterminously decide whether SSD is entitled to apply for its requested fees. This will also answer the question of whether "litigation fees and expenses" includes attorneys' fees as urged by SSD. The court notes that it is not restricted to the pre-approved compensation: 'the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." Nischwitz v. Miskovic (In re Airspect Air, Inc.), 385 F.3d 915, 920 (6th Cir. 2004) (citing 11 U.S.C. § 328(a)). The court declines to exercise any of its powers under § 328(a) because it cannot conclude that anything that transpired during or through LNL's employment could not be anticipated.

Paragraph twenty-one of SSD's employment application contains the following recitations:

> (b) MDA will pay the reasonable expenses attendant to prosecution and defense of the claim in the consolidated removed cases.
>
> \* \* \*
>
> (d) All net proceeds from any recovery by the estate and/or MDA, by litigation or settlement, will be pooled and allocated as follow (sic):
>
> > (i) First, 100% of actual litigation fees and expenses will be reimbursed to SSD, MDA and the Trustee, but pro rata if any recovery is insufficient to pay 100% of such fees and expenses, if any.
> >
> > (ii) The remainder of any recovery, if any, will be shared 55% to MDA, 30% to SSD, and 15% to the Trustee. This allocation reflects the relative value of the contributions from MDA, SSD and the Trustee to the prosecution and defense of the removed, consolidated Frank-

6

> lin and Ashland County Actions. MDA will contribute
> a substantial amount of cash, SSD will contribute substantial professional services and the Trustee will contribute the cooperation of the Debtor and time necessary to facilitate and support the prosecution and defense of the removed, consolidated Actions.

(App. of the Tr. Authorizing Retention and Employment of Squire, Sanders & Dempsey, ECF No. 87.)

Although "net proceeds" is not defined, the parties have not raised an issue concerning this term and appear to be in agreement on the amount of funds that were subject to pooling under subsection (d). It is the allocation that is troubling. Subsection (i) states that, from the pool, SSD, MDA and Trustee are to be reimbursed "100% of actual litigation fees and expenses." Trustee now argues that "litigation fees" do not encompass the attorneys' fees contained in SSD's fee application. Rather, he argues for a definition of "actual litigation fees" that includes "out of pocket fees for, e.g., expert witnesses and other out of pocket expenses" and excludes attorney fees.

Problematically, Trustee offers very little support for his position. His position is further eroded by the parties' agreement that defined these same items as "expenses" to be paid by MDA. The engagement letter provides that MDA "will advance all of the expenses reasonably necessary to the prosecution and defense of claims . . . including all witness and expert fees and expenses." Id. John Gall's affidavit further defines the expenses that MDA was covering: "[t]hese expenses include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees, expert fees and all other expenses related to trials and hearings." (App. of the Tr. Authorizing Retention and Employment of Squire, Sanders & Dempsey, Ex. A, ¶ 9(d), ECF No. 87-1.) The very out-of-pocket items that Trustee now suggests comprise the "litigation fees" were specifically directed to be paid by MDA as expenses. Moreover, the definition broadly encompasses "all other expenses." This seriously undermines Trustee's interpretation of "litigation fees" as some genre of expenses.

While the phrase "litigation fees" is not as common as other terminology, such as "legal fees" or "attorneys' fees," these words and phrases are viewed by courts as terms of art. *See, e.g.,* Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626 (1985) (discussing "legal fees"); Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291-92 (2006) ("costs" is a term of art that does not generally include expert fees); Hackwell v. U.S., 491 F.3d 1229, 1239 (10th Cir. 2007) (noting "Plaintiffs' argument is supported by several scholarly sources that clearly distinguish expenses and fees, therefore further underscoring the historical and lexical distinction between a fee for services rendered and reimbursement for costs incurred" (citations omitted)); Standard Commc'ns, Inc. v. U.S., 106 Fed.Cl. 165, 176 (2012) (recognizing that "costs and expenses are not synonymous but are words of art" (citing Bennett v. Dep't of the Navy, 699 F.2d 1140, 1143-44 (Fed. Cir. 1983))). In Zauderer, an attorney advertised he would represent women with Dalkon Shield claims on a contingent basis and stated that '[i]f there is no

7

recovery, no legal fees are owed by our clients." Zauderer, 471 U.S. at 631. He was charged by the Office of Disciplinary Counsel with a violation of DR 2-101(B)(15) because lay persons may not have understood that, even though they were not responsible for legal fees, they may have to pay costs. The case was presented on free speech grounds, but the Supreme Court noted:

> The advertisement makes no mention of the distinction between "legal fees" and "costs," and to a layman not aware of the meaning of these terms of art, the advertisement would suggest that employing appellant would be a no-lose proposition in that his representation in a losing cause would come entirely free of charge . . . it is commonplace that members of the public are often unaware of the technical meanings of such terms as "fees" and "costs"-terms that, in ordinary usage, might well be virtually interchangeable.

Id. at 652.

As terms of art, "fees," "expenses," and "costs," and similar words and phrases, impress separate and distinct meanings. Downes v. Volkswagen of Am., Inc., 41 F.3d 1132, (7th Cir. 1993) (noting 'expenses of litigation … are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates—expenses for such things as postage, long distance phone calls, xeroxing, *travel*, paralegals and expert witnesses—are part of the reasonable attorney's fee allowed by the Civil Rights Attorney Fees Awards Act.' (emphasis original) (citing Heiar v. Crawford Cnty., 746 F.2d 1190, 1203 (7th Cir. 1984))). In the legal arena, the term "fee" may be applied to a variety of charges. For example, a litigant may pay a "filing fee" or a witness may be entitled to reimbursement for a "witness fee." However, routinely any amount paid to an attorney for services is specifically identified as a "fee." Accordingly, Black's Law Dictionary defines "fee" as "a charge for labor or services, esp. professional services." Black's Law Dictionary (9th ed. 2009). In turn, "litigation" is defined as "(1) process of carrying on a lawsuit . . . (2) [a] lawsuit itself." Id. Strictly as defined, the court therefore finds that "litigation fees" can include attorneys' fees. See Dardinger v. Anthem Blue Cross & Blue Shield, 98 Ohio St.3d 77, 105 (Ohio Sup. Ct. 2002) (providing that the remainder of an award "should be drawn an amount for the payment of litigation fees, including attorney fees"); John Kohl & Co. P.C. v. Dearborn & Ewing, 977 S.W.2d 528, 534 (Sup. Ct. Tenn. 1998) (recognizing "three categories of attorney's fees that may constitute damages resulting from legal malpractice . . . (3) 'litigation fees,' which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer"); (Higgins v. SPX Corp., 2006 WL 1547302, *3 (W.D. Mich. 2006) (discussing "fees on fees," court recognizes that it 'refers to an award of litigation expenses (including attorneys' fees) incurred in the process of obtaining another award of litigation expenses pursuant to some statutory or contract authority' (citations omitted)). The court finds that "fees" are most commonly associated with the charges from attorneys for professional services. Consequently, the court cannot agree with Trustee's strained interpretation that the term "litigation fees" excludes attorneys' fees, especially when used in conjunction with the term "expenses."

This conclusion is supported by the documents. The application to employ SSD

specifically states that "[a]ny references to or summaries of the Engagement Letters herein are qualified by the express terms of the Engagement Letters, which shall govern if there is any conflict other than those addressed and resolved herein."  (App. of the Tr. Authorizing Retention and Employment of Squire, Sanders & Dempsey, ¶ 20, ECF No. 87.)   The court must read the documents 'as a whole . . .   giving, wherever possible, effect to every provision.'   In re Bunting Bearings, 331 B.R. 313, 319 (Bankr. N.D. Ohio 2005) (citing Prudential Ins. Co. v. Corporate Circle, 103 Ohio App.3d 93, 98 (Ohio App. 8th Dist. 1995)).   'When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.  As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.' Terlecky v. Nat'l City Mortg. Co. (In re Doutt), 2012 WL 3838767 (Bankr. S.D. Ohio 2012) (citing Cincinnati Ins. Co. v. CPS Holdings, Inc., 875 N.E.2nd 31, 34 (Ohio Sup. Ct. 2007) (other citation omitted)).

The application and the engagement letter use the identical terminology, providing that net proceeds were first used to pay "actual litigation fees and expenses."   The engagement letter also uses the terms "contingency fee," "legal fees" and " attorneys' fees:"

> 1.   …SSD further agrees to accrue all *legal fees* incurred in connection with its further prosecution and defense of the above-referenced consolidated Adversary Proceeding throughout the remainder of the Proceeding in the Bankruptcy Court or the District Court for the Northern District of Ohio. . . . SSD further agrees that it will collect the future *legal fees* accrued, and an additional amount represented by the contingency outlined in (3)(e)(ii) below, only if one of three events occurs . . . . (c) there is an award of *attorneys fees* by the Bankruptcy Court . . . either pursuant to a contractual indemnification obligation or pursuant to a fee award otherwise.
>
> \*   \*   \*
>
> 3.   [T]here is a substantial risk that SSD will not collect its accrued *fees* and that MDA will not recover its accrued expenses unless SSD is successful in the prosecution and defense . . . .[T]he agreement between us will reflect a success payment in the form of a contingency award that may produce a recovery for SSD and MDA over and above the amount of *fees* and expenses that would be calculable on an hourly rate or invoiced amount basis.
>
> \*   \*   \*
>
> (f)  In the event that this agreement is voided by any such party or parties, the waivers herein described are also void and SSD and MDA would be entitled to recover only the reasonable value of the *attorneys' fees* and expenses incurred as of that date . . . .

9

(emphasis added) (App. of the Tr. Authorizing Retention and Employment of Squire, Sanders & Dempsey, Ex. B, pp. 3-5, ECF No. 87.) The court must determine whether the "fee" terms are coextensive and, if so, their intended meaning.

SSD acknowledged its intent to accrue legal fees. Since MDA was paying expenses, as broadly defined above, it is difficult to see how "legal fees" could mean anything other than attorneys' fees. Moreover, "legal fees" has a stronger connotation of payment for attorney services than "litigation fees" because it is more commonly used to refer to attorneys' fees. Paragraph one distinctly separates legal fees from the contingency award. Under the agreement, SSD intended to collect its legal fees and the contingency fee if successful. This two-tiered compensation structure also is reflected in paragraph twenty-one of SSD's retention application. Under ¶ 21(d)(i), SSD was entitled to "100% of actual litigation fees and expenses" while ¶ 21(d)(ii) provided for the contingency award. This further supports the understanding that "legal fees" were used synonymously with "litigation fees."

Clearly, "actual litigation fees and expenses" were to be paid first. The court reads "actual litigation fees and expenses" to refer to reimbursement for SSD's actual hourly fees and other expenses. Once these amounts were paid to SSD and the other parties, if money remained in the kitty, SSD was then entitled to a kicker, in the form of the thirty percent bonus. This was intended to be a windfall to compensate SSD for its risk-taking in prosecuting the case and MDA's front of litigation expenses. The contingency fee was intended to function solely as a bonus or reward for success. Since the kicker was not tied to any actual work, the parties' retention agreement provided that no fee application would be filed to support it. (App. of the Tr. Authorizing Retention and Employment of Squire, Sanders & Dempsey, ¶ 26, ECF No. 87.)[3] This interpretation separates "litigation fees" from the "contingency fee" and also serves to further distinguish attorney/legal/litigation fees from the contingency fee.

Even upon avoidance of the compromise and agreement with Trustee, SSD had a plan to recover its attorney fees:

> In the event that this agreement is voided by any such party or parties, the waivers herein described are also void and SSD and MDA would be

---

[3] Paragraph twenty-six did give the court pause for confusion. It states that if the contingency fee agreement is approved, "neither SSD nor MDA intend to apply to the Court for payment of compensation and reimbursement of expenses in accordance with Section 330 of the Bankruptcy Code." This fully comports with the understanding of a typical contingency agreement where an award covers attorneys' fees and also fits into Trustee's understanding of the parties' agreement. If SSD's attorneys' fees were included in the contingency award, no fee application would be required. Here, the interpretation of "litigation fees and expenses" results in the payment of attorneys' fees and expenses before the contingency fee. Consequently, there would be nothing subject to be paid under a fee application. And since this is not a contingent award, but based on actual fees and expenses, the parties cannot obviate a fee application for payment for "actual litigation fees and expenses." Although initially confusing, since the court views the "actual fees and expenses" to be distinct from the contingency fee, this provision can be read as strictly applicable to the contingency fee portion of the agreement. It therefore makes sense that no fee application would be required.

>  entitled to recover only the reasonable value of the attorneys' fees and
>  expenses incurred as of that date, and only in the event that the Debtor
>  subsequently obtains a net recovery on any of the claims asserted or to
>  be asserted in the Consolidated Actions.

(App. of the Tr. Authorizing Retention and Employment of Squire, Sanders & Dempsey, Ex. B, ¶ 3(f) , ECF No. 87.)   Basically, if the agreement was voided, the plan was for SSD to forego its contingency fee but remain entitled to its attorneys' fees and expenses.   This is basically what transpired, albeit without any party formally voiding the agreement.

Although the court is not convinced that the parties truly had a subjective meeting of the minds when Trustee hired either SSD or LNL, it finds the documents are unambiguous and have a clearly accepted legal meaning.   As a result, the court may not consider any extrinsic evidence in interpreting the documents.   <u>Hearne v. Marine Ins. Co.</u>, 87 U.S. 488, 492 (1874) ("If the words employed have an established legal meaning, parol evidence that the parties intended to use them in a different sense will be rejected, unless if interpreted according to their legal acceptation, they would be insensible with reference to the context or the extrinsic facts." (footnote omitted)); <u>Schachner v. Blue Cross and Blue Shield of Ohio</u>, 77 F.3d 889 (6th Cir. 1996).   Based on the above, the court concludes that the term "actual litigation fees and expenses" covers reimbursement to SSD for its attorneys' fees.   Under the order approving SSD's employment, SSD is entitled to apply for reimbursement of its attorneys' fees as part of litigation fees.   This does not conclude the court's inquiry, however, because SSD's representation terminated prior to conclusion of the state court action.   On February 10, 2010, Trustee sought to employ LNL as "substitute special litigation counsel."   The application to employ LNL clearly states that LNL was to replace SSD, referencing LNL as substitute counsel.   There was a clear intent to change the compensation structure between the parties.

Under LNL's application, LNL will "be reimbursed for its out-of-pocket costs and expenses incurred . . . and the Trustee shall pay to LNL a contingent fee of 30% of the total amount recovered which will be paid from the settlement, verdict, or judgment of the Franklin County Action . . . ."   (App. of the Tr. Authorizing Retention and Employment of Luper Neidenthal & Logan, ¶ 21, ECF. No. 119.)   This is supported by the Contingent Fee Agreement attached to the employment application:

>  In consideration of the legal representation by Attorney
>  contemplated in this Agreement, Client agrees to pay,
>  and hereby assigns to Attorney, <u>thirty percent (30%)</u> of
>  the total amount recovered for Attorney's legal services,
>  which will be paid from the settlement, verdict, judgment,
>  or in the event of a structured settlement, the cost, if dis-
>  closed, or the present value of said settlement, if undis-
>  closed.

*   *   *

11

>           In the event of recovery, the Attorney's contingent fee
>           will be calculated *before* all costs and expenses still owed
>           by Client are deducted from the recovery.

(emphasis original) (App. of the Tr. Authorizing Retention and Employment of Luper Neidenthal & Logan, Ex. A, ECF No. 119.)

This compensation structure is later subject to a further limitation by the following provision in the application:

> 24. All net proceeds from any recovery by the estate by litigation and settlement of the Franklin County action, (sic) will be pooled and allocated as follows:
>
>     (i) First, 100% of actual litigation fees and expenses will be reimbursed to Squire, Sanders and Dempsey, LNL, MD Acquisition, and the Trustee, but such fees and expenses will be reimbursed pro-rata if any recovery is insufficient to pay 100% of such fees and expenses.
>
>     (ii) The remainder of any recovery by the bankruptcy estate, if any, will be distributed by the Trustee pursuant to 11 U.S.C. Section 726 and further Order of this Court. It is understood that the Client is a Chapter 7 Trustee in Bankruptcy and is not liable for any expenses or costs payable to the Attorney for any other entity set forth herein.

Several changes are immediately apparent. First, LNL's employment clearly resulted in termination of the 55/35/15 split under subsection (ii), eliminating the contingency fees payable to SSD and MDA. Second, in accordance with the LNL application's statement that "[t]he split of the settlement has been rescinded," paragraph twenty-four eliminates any MDA monies from the pool, leaving only the estate's share. (App. of the Tr. Authorizing Retention and Employment of Luper Neidenthal & Logan, ¶¶ 22, 24, ECF No. 119.) Third, under paragraph 24(i), LNL has been added to the list of parties entitled to recover up to one hundred percent of its fees and expenses, subject to proration.

Looking at the compensation structure, the court finds that LNL's thirty-percent contingency fee constitutes its "litigation fees." Thus, LNL's share of the distribution from the estate's recovery is based on the total of its contingency award plus any unpaid expenses it advanced. It is entitled to recoup 100% of this amount if funds are available to pay the litigation fees and expenses of all the parties in full. There is no dispute that the estate's recovery from the

12

state court judgment does not provide for payment of all litigation fees and expenses in full. Consequently, the parties moved to adopt procedures to determine their prorata shares of the recovery. (Ag. Order . . . Establishing Procedures to Determine the Pro Rata Calculation of Fees and Expenses, ECF No. 224.) This indicates that there will be nothing to distribute to the estate in accordance with ¶ 24(ii), so the estate stands to gain nothing from any reduction in fees or expenses to SSD or MDA.[4] LNL therefore does not have an interest that is adverse to the estate. While the interests between SSD, LNL, MDA and Trustee may compete in the proration of the fees and expenses, no monies that would be available to pay general estate creditors are at stake. Consequently, LNL does not hold an adverse interest to the estate, nor can the court find that LNL has a predisposed bias against the estate.

### B. *Disinterestedness*

Section 327(a) forbids employment by professionals unless they are "disinterested person[s]." A "disinterested person" is one who

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). Clearly, LNL is not a creditor, equity security holder, or insider as outlined in § 101(14)(A). Neither did LNL serve as a director, officer or employee of debtor within two years of the filing date, which would be grounds for disqualification under § 101(14)(B). At one point, SSD does mention the penchant for LNL's interest to compete with SSD's. Under § 101(14)(C), a professional's adverse interest with a class of creditors may be grounds for denying employment. However, that adverse interest must be "by reason of any direct or indirect relationship to, connection with, or interest in, the debtor." There is no identified tie between Debtor and LNL to render (C) applicable. Additionally, SSD cannot seriously contend it is a "class of creditors" under the statute. Finally, any compensation to LNL for work covered in the current retention application will be paid from the estate, not the funds from the state court award. Thus, there is no adverse interest between SSD and LNL in this regard that warrants additional consideration.

---

4 Although the parties do not discuss the recovery, it appears that Trustee is entitled to $450,000 under a compromise with the trustee of the Martin L. Myers' estate, resulting from a sale of Mr. Myers' interest in Pet Brands, Inc. in which Debtor claimed an interest under a constructive trust theory. The compromise also provides opportunity for additional recovery which appears highly speculative at this point. Fees and expenses for SSD, LNL, and MDA are in the neighborhood of $2,000,000. With these figures as the backdrop, it may be advisable for LNL to consider how it will prove benefit to the estate under 11 U.S.C. § 330(a)(4)(A)(ii)(I) for representing Trustee in his challenge of SSD's fee application if no funds are available for distribution to creditors.

13

08-60431-rk    Doc 230    FILED 03/22/13    ENTERED 03/22/13 11:27:33    Page 13 of 14

Having found that LNL does not hold an adverse interest to the estate, and that it is a disinterested person, the court will approve the application to retain LNL for the purpose of reviewing SSD's fee application. The above exposition fully answers the two questions presented to the court. The parties reserved consideration of the reasonableness of any fees contained in SSD's application for another day.

## II. Trustee's Motion in Limine

On November 20, 2012, Trustee filed a motion in limine seeking to limit the court's consideration of certain documents offered in support of SSD's fee application. SSD responded on December 11, 2012. Because the parties limited the questions before the court, the motion was not argued. Since the motion pertains to the fee application, which is not yet before the court, the court declines to consider the motion in limine at this time. The court will schedule a status conference to discuss how to proceed with the motion in limine and SSD's fee application.

An order will be issued immediately.

#   #   #

**Service List:**

Frederick M Luper
Luper Neidenthal & Logan
50 W Broad St
#1200
Columbus, OH 43215

Squire, Sanders & Dempsey, L.L.P.
127 Public Square
#4900
Cleveland, OH 44114

Mason Mason&Kearns
PO Box 345
153 W Main St
Ashland, OH 44805-2219